UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:22-CV-00139-HBB

**TONI P.**[1]           **PLAINTIFF**

VS.

**KILOLO KIJAKAZI, ACTING COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**           **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

Before the Court is the Complaint (DN 1) of Toni P. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 12) and Defendant (DN 14) have filed a Fact and Law Summary, and Plaintiff has filed a Reply Brief (DN 15). For the reasons that follow, the final decision of the Commissioner is **REVERSED,** and the case is **REMANDED** to the Commissioner with instructions to consider additional evidence and conduct additional proceedings to remedy the below identified defects in the original proceedings.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 9). By Order entered December 19, 2022 (DN 8), the parties were notified that oral arguments would not be held unless a written

---

1 Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

request therefor was filed and granted.   No such request was filed.

## II.   FINDINGS OF FACT

On May 17, 2018, Plaintiff protectively filed an application for Supplemental Security Income (Tr. 187, 396-401).   Plaintiff alleged that she became disabled on March 14, 2017, as a result of depression, anxiety, Post Traumatic Stress Disorder ("PTSD"), panic attacks, and insomnia (Tr. 150-51, 167, 187, 431).   The application was denied initially on September 21, 2018, and upon reconsideration on February 5, 2019 (Tr. 166, 183, 187).[2]   On June 6, 2019, Plaintiff filed a written request for hearing (Tr. 187, 221-25).

On January 2, 2020, Administrative Law Judge D. Lyndell Pickett ("ALJ") conducted a video hearing from Louisville, Kentucky (Tr. 98, 187).   Plaintiff and her counsel, Mary G. Burchett-Bower, participated from Bowling Green, Kentucky (Id.).   Robert G. Piper, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated February 4, 2020, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 187-96). Essentially, the ALJ found that Plaintiff had the following severe impairments: depression, anxiety, and a history of substance abuse (Tr. 189).   The ALJ determined that Plaintiff did not have an impairment or combination of impairments the meets or equals the severity of one of the listed impairments in Appendix 1 (Id.).   The ALJ concluded that Plaintiff had the physical Residual Functional Capacity ("RFC") to perform a full range of work at all exertional levels but, due to her mental impairments, Plaintiff had the following nonexertional limitations: she can

---

2 The ALJ indicates the application was denied upon reconsideration on February 7, 2019 (Tr. 187).   As the Disability Determination and Transmittal form indicates February 5, 2019 (Tr. 183), the undersigned has used that date.

2

understand, carry out and remember simple instructions and respond appropriately to supervisors and coworkers in usual work situations; she is able to deal with changes in a routine work setting that does not require working with the general public and only occasional interaction with supervisors and coworkers; and the work must be low stress without strict production rate quotas (Tr. 190-91). As the ALJ determined Plaintiff was unable to perform any past relevant work, the ALJ proceeded to the fifth step where he found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, considering her age, education, work experience, and RFC (Tr. 195-96). Therefore, the ALJ concluded that Plaintiff has not been under a disability since May 17, 2018, through the date of the decision (Tr. 196).

Plaintiff filed a request for the Appeals Council to review the ALJ's decision (Tr. 285-87). On December 14, 2020, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case for resolution of several errors at the fourth and fifth steps in the sequential evaluation process (Tr. 204-06).

On June 9, 2021, the ALJ held a telephonic hearing due to the extraordinary circumstances presented by the COVID-19 Pandemic (Tr. 16, 72). Plaintiff, with her attorney Mary Burchett-Bower, participated and testified by telephone (Id.). Matthew McClanahan, an impartial vocational expert, also participated and testified by telephone (Id.).

In a decision dated August 4, 2021, the ALJ evaluated Plaintiff's adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 16-31). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 17, 2018, the alleged onset date (Tr. 19). At the second step, the ALJ determined that Plaintiff has the following severe impairments: depression, anxiety, and polysubstance abuse

(alcohol and drugs) (Id.). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 21).

At step four, the ALJ found that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember, and carry out simple and low-level detailed tasks, but not multistep detailed instructions; she can sustain concentration, persistence, or pace on such simple and low-level detailed tasks throughout an eight-hour workday with customary work breaks; she can maintain regular attendance, consistency, and pace (for simple tasks); she can tolerate occasional interaction with coworkers and supervisors, but no interaction with the public; she can accept and utilize supervision and criticism from supervisors and/or coworkers; and she can adapt to infrequent (occasional) changes gradually introduced in the work environment (Tr. 23 ). Additionally, the ALJ determined that Plaintiff is unable to perform any past relevant work (Tr. 29).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 30-31). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, since May 17, 2018, the date the application was filed (Tr. 31).

Plaintiff filed a request for the Appeals Council to review the ALJ's decision (Tr. 393-95). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

### III. CONCLUSIONS OF LAW

#### A. The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Supplemental Security Income to persons with disabilities. 42 U.S.C. § 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an inability to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A) (Title XVI); 20 C.F.R. § 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. § 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

5

B.  Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Hum. Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Hum. Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton, 2 F.3d at 695-96.

### C. Challenges to the RFC

*1. Arguments of the Parties*

Plaintiff makes several assertions in support of her claim that the ALJ's mental RFC finding is not supported by substantial evidence in the record (DN 12 PageID # 1413-21) (citing Finding No. 4, Tr. 23-29).  First, Plaintiff argues that the ALJ failed to adequately consider the evidence of record which shows the cited episodes of improvement followed inpatient treatment in January 2019, December 2019, and May 2021, were short lived, and were inconsistent with the ability to sustain employment in any type of work environment (DN 12 PageID # 1413-15) (citing Finding No. 4, Tr. 23, 24-29).  Next, Plaintiff argues that substantial evidence does not support the ALJ's persuasiveness assessment of the prior administrative medical findings by the state agency reviewing psychologists (Gary Perry, Ed.D., and Paul Ebben, Psy.D.) (Id. at PageID # 1415-18).³  Additionally, Plaintiff asserts that substantial evidence does not support the ALJ's persuasiveness assessment of the opinions expressed by the treating psychiatric nurse practitioner Carol Stowe-Byrd (DN 12 PageID # 1418-19).  Finally, Plaintiff contends that substantial evidence does not support the ALJ's findings concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms (DN 12 PageID # 1419-20).

In response to the first claim, Defendant asserts that the ALJ's mental RFC findings are supported by substantial evidence because the ALJ considered all of the evidence of record in reaching the mental RFC findings (DN 14 PageID # 1428-33).⁴  As to Plaintiff's next claim,

---

3 Plaintiff points out Drs. Perry and Ebben did not have the opportunity to review the bulk of the medical evidence (Tr. 746-49, 750-919, 976-1064, 1065-81, 1082-1129, 1140-1288, 1293-1314, 1319-55, 1356-1374), the mental assessments of the treating psychiatric nurse practitioner Carol Stowe-Byrd (Tr. 966-68, 969-72, 1315-19), and the inpatient treatment records (Tr. 818-31, 1015-58, 1319-55) (DN 12 PageID # 1415-18).  Additionally, Plaintiff points out that the opinions of Drs. Perry and Ebben are inconsistent with the findings of consultative evaluator Kathy Seigler, Psy.D., on September 20, 2018 (Tr. 679-86), and the opinions of APRN Stowe-Byrd (Id.).
4 Defendant asserts that the ALJ considered the admissions in January 2019 and May 2021, examinations over the

7

Defendant contends the ALJ considered subsequently received evidence, including the opinions of Dr. Siegler and APRN Stowe-Byrd, in assessing the persuasiveness of the prior administrative medical findings by the state agency reviewing psychologists (Id. at PageID # 1435-40). Defendant contends that the ALJ appropriately evaluated the opinions of APRN Stowe-Byrd (Id. at 14 PageID # 1440-42). Finally, Defendant indicates that the ALJ appropriately considered Plaintiff's subjective statements and the findings are supported by substantial evidence (Id. at PageID # 1442-46).

In reply, Plaintiff reasons that substantial evidence does not support the ALJ's mental RFC finding because the ALJ overlooked medical evidence regarding the severity of her mental condition (DN 15 PageID # 1449-51).

2. *Applicable Law*

The RFC determination is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946(c). Administrative Law Judges make this finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 416.929, 416.945(a)(3), 416.946(c). Thus, in making the RFC determination Administrative Law Judges must necessarily evaluate the persuasiveness[5] of the medical source statements and prior administrative medical findings in the record as well as assess the claimant's subjective allegations. 20 C.F.R. §§ 416.1520c, 416.1529(a).

---

relevant period, and evidence indicating Plaintiff has the ability to work on a sustained basis (DN 14 PageID # 1428-33).

5 The new regulations for evaluating medical opinions and prior administrative medical findings are applicable to Plaintiff's case because she filed her application after March 27, 2017 (Tr. 187, 396-401). *See* 20 C.F.R. §§ 404.1520c, 416.920c. Under the new regulations, the Administrative Law Judges evaluate the "persuasiveness" of medical opinions and prior administrative medical findings. 20 C.F.R. § 416.920c(a) and (b).

The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[6] in the record, even if it comes from a treating medical source. 20 C.F.R. § 416.920c(a).[7] Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. § 416.920c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 416.920c(c)(1)-(5).[8] Of these five factors, the two most important are supportability and consistency. 20 C.F.R. § 416.920c(a) and (b)(2). Further, the regulation requires Administrative Law Judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 416.920c(b)(2). Notably, under the regulations Administrative Law Judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 416.920c(b)(2).

*3. Discussion*

The ALJ's discussion of evidence supporting his mental RFC findings is limited to only 47 of the nearly 800 pages of treatment notes in the administrative record (Tr. 24-26).[9] Moreover,

---

6 At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings." 20 C.F.R. § 416.913a(a)(1). Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation. 20 C.F.R. § 416.913a(b)(1).
7 The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 416.927(c)(2).
8 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 416.920c(c)(3)(i)-(v).
9 Specifically, the 47 pages of treatment notes that the ALJ cites are Tr. 560, 563, 564, 569, 576, 647, 657, 742, 744, 756, 761, 767, 768, 773, 774, 776, 778, 779, 781, 958, 1065, 1068, 1071, 1072, 1074, 1076, 1079, 1141, 1144, 1147,

the ALJ's five-paragraph conversation about those 47 pages of treatment records is unique, confusing, and deprives the reader of important evidence that would provide a holistic and accurate depiction of Plaintiff's mental health during the period adjudicated by the ALJ's decision.

In the first of those five paragraphs, the ALJ identifies only assessments and diagnoses of Plaintiff's mental health conditions (i.e., major depressive disorder without psychotic features, and PTSD) by calendar year beginning with 2017 and ending with 2021 (Tr. 24).[10] In the second paragraph, the ALJ lists Plaintiff's severe reported psychiatric symptoms (i.e., suicidal ideation, really depressed) by calendar year (Tr. 24-25).[11] In the third paragraph, the ALJ sets forth Plaintiff's non-severe reported psychiatric symptoms (i.e., denied suicidal ideation, improved mood) by calendar year (Tr. 25).[12] In the fourth paragraph, the ALJ lists only the serious mental health signs and findings (i.e., somatically preoccupied behavior, limited insight and judgment, depressed mood/affect) by calendar year (Tr. 25).[13] In the fifth paragraph, the ALJ identifies the "relatively unremarkable psychiatric findings" (i.e., cooperative behavior, normal speech) by calendar year (Tr. 25-26).[14]

Through this format, the ALJ minimalizes and fragments the important medical evidence in the record by providing fleeting comments in different paragraphs that lack important contextual information necessary for the reader to connect the information to specific related events and

---

1152, 1161, 1166, 1169, 1172, 1175, 1319, 1320, 1322, 1324, 1328, 1329, 1332, 1365, 1369, 1370, 1373).

10 In this paragraph, the ALJ cites the treatment notes at Tr. 563, 647, 657, 767, 776, 781, 1074, 1320, 1332, 1373 (Tr. 24).

11 In the second paragraph, the ALJ cites the treatment notes at Tr. 560, 569, 647, 761, 768, 1065, 1068, 1076, 1079, 1141, 1144, 1147, 1161, 1172, 1319, 1322, 1328, 1365 (Tr. 24-25).

12 In the third paragraph, the ALJ cites the treatment notes at Tr. 564, 569, 756, 773, 778, 779, 1068, 1071, 1072, 1079, 1144, 1147, 1320, 1324, 1328, 1369 (Tr. 25).

13 In the fourth paragraph, the ALJ cites the treatment notes at Tr. 564, 576, 647, 768, 774, 1141, 1152, 1169, 1175 (Tr. 25).

14 In the fifth paragraph, the ALJ cites the treatment notes at Tr. 564, 576, 647, 742, 744, 958, 1072, 1141, 1152, 1166, 1175, 1329 (Tr. 25-26).

appreciate both the seriousness and instability of Plaintiff's mental impairments. For example, in the second paragraph the ALJ transiently acknowledges Plaintiff's admission to an inpatient crisis stabilization unit in January 2019 and again in May 2021 (Tr. 25). Glaringly absent is information that connects these inpatient admissions to the diagnoses and mental health findings that the ALJ may have briefly, if at all, mentioned in the first, fourth and fifths paragraphs of his discussion (Tr. 24-26). Moreover, the ALJ does not inform the reader that Plaintiff was admitted to an inpatient crisis stabilization unit for treatment from January 10 through January 14, 2019 (Tr. 818-31) and May 25 through May 27, 2021 (Tr. 1319-55). Further, the ALJ does not discuss the changes in and adjustments to prescription medications in an effort by medical providers to stabilize Plaintiff's mental impairments prior to her discharge from inpatient treatment (Tr. 818-31, 1319-55). Equally disturbing, the ALJ does not even mention that Plaintiff was admitted for treatment at an inpatient crisis stabilization unit from May 19 through May 25, 2016, due to suicidal ideation with a plan to overdose (Tr. 560-623) and from December 9 through December 12, 2019, due suicidal ideation brought on by grief (Tr. 1015-23, 1027-58). Yet in four different paragraphs the ALJ fleetingly refers to bits of evidence that came from those very treatment records (Tr. 24-26). These failings deprive the reader of the opportunity to appreciate the difference or improvement in Plaintiff's condition from the time of her admission for inpatient care to the time of her discharge and how long the improvement lasted before her condition again deteriorated.

Another consequence of the ALJ's disconcerting approach to summarizing the 47 pages of medical evidence is a disturbing lack of important contextual information depicting the cyclical instability of Plaintiff's depression throughout the time period addressed by the ALJ's decision. The ALJ does not acknowledge substantial evidence in the record that shows Plaintiff experienced

short-lived periods of stabilization concerning her depression and PTSD following each of her four inpatient treatments. Additionally, without the benefit of a medical opinion to support his determinations, the ALJ may have impermissibly interpreted the raw medical data when he made findings concerning whether exam records indicated relatively unremarkable or normal psychiatric findings for diagnoses of depression and PTSD.

Defendant suggests that the ALJ's failure to discuss certain evidence in the record does not indicate that the evidence was not considered. *See* Simons v. Barnhart, 114 F. App'x 727, 733 (6th Cir. 2004). Defendant's reliance on Simons is misplaced because the circumstances here are distinguishable from those in Simons. The Administrative Law Judge in Simons failed to discuss a specific doctor's diagnosis. Id. Here, by contrast, the ALJ's discussion of evidence supporting his mental RFC findings is limited to 47 of the nearly 800 pages of treatment notes in the administrative record (Tr. 24-26).[15] Clearly, the ALJ's discussion omitted large portions of the medical evidence concerning inpatient and outpatient treatment to stabilize Plaintiff's depression. For the above reasons, the 47 pages of treatment notes that the ALJ relies on to support his mental RFC findings do not constitute substantial evidence in the record.

Moving on to the ALJ's persuasiveness assessment of the prior administrative medical findings, Plaintiff points out that the state agency reviewing psychologists, Gary Perry, Ed.D., and Paul Ebben, Psy.D., did not have the opportunity to review the bulk of the medical evidence in the record. Plaintiff reasons that the ALJ's persuasiveness assessment is not supported by substantial evidence in the record because these opinions are not consistent with the medical evidence

---

15 Specifically, the ALJ's discussion is limited to the 47 pages of treatment notes at Tr. 560, 563, 564, 569, 576, 647, 657, 742, 744, 756, 761, 767, 768, 773, 774, 776, 778, 779, 781, 958, 1065, 1068, 1071, 1072, 1074, 1076, 1079, 1141, 1144, 1147, 1152, 1161, 1166, 1169, 1172, 1175, 1319, 1320, 1322, 1324, 1328, 1329, 1332, 1365, 1369, 1370, 1373 (Tr. 24-26).

documenting unstable mental functioning over time, the findings of consultative examiner Kathy Seigler, Psy.D., and the opinions of the treating psychiatric nurse Carol Stowe Byrd, DNP, APRN.

At the initial level, The Disability Determination Explanation addressing Plaintiff's application was issued on September 21, 2018 (Tr. 150-65). Included therein is the Psychiatric Review Technique ("PRT") and Mental Residual Functional Capacity Assessment ("MRFCA") that Dr. Perry, the State agency consultant, prepared on September 21, 2018 (Tr. 158-62). Dr. Perry acknowledged a prior Administrative Law Judge's decision, dated March 13, 2017, and indicated that it was both applicable and adopted (Tr. 158-60). That prior decision adjudicated the period January 1, 2013, through March 13, 2017 (Tr. 120-38).[16] As Plaintiff's current application alleges a March 14, 2017 onset of disability, Dr. Perry's MRFCA addresses the period that proximately follows the period adjudicated in the prior Administrative Law Judge's decision. Notably, Dr. Perry's MRFCA adopted verbatim the mental RFC findings set forth in that prior decision (*compare* Tr. 131 *with* Tr. 162).

When Dr. Perry issued his MRFCA, there were five medical exhibits in the administrative record: Exhibit B1F, Plaintiff's inpatient crisis stabilization treatment from May 19 through May 25, 2016 (Tr. 560-654); Exhibit B2F, a treatment record dated June 4, 2018, that addresses cramping and numbness in Plaintiff's feet and legs (Tr. 655-57); Exhibit B3F, psychosocial evaluation and clinician interview and summary from LifeSkills, Inc. dated June 26, 2018 (Tr. 660-70); Exhibit B4F, consultative physical examination report prepared by Dr. Kip R. Beard, dated August 29, 2018 (Tr. 672-77); and Exhibit B5F, a consultative psychological examination report prepared by Kathy Seigler, Psy.D., dated September 20, 2018 (Tr. 679-84). Notably, Dr.

---

16 The mental RFC findings set forth in the prior Administrative Law Judge decision included consideration of Plaintiff's inpatient crisis stabilization treatment from May 19 through May 25, 2016 (Tr. 133).

13

Perry indicated that the information set forth in Dr. Seigler's report "does not alter the ALJ decision which is adopted" (Tr. 160). Apparently, the Sixth Circuit's holding in Drummond v. Comm'r of Soc. Sec., 126 F.3d 837, 841-42 (6th Cir. 1997) may have influenced Dr. Perry's decision to adopt verbatim the mental RFC findings set forth in the prior decision dated March 13, 2017, as he determined there was no new evidence that would alter those findings (*see* Tr. 156-57, 159-60, 164).[17]

At the reconsideration level, The Disability Determination Explanation was issued on February 4, 2019 (Tr. 167-82). Included therein is the PRT and MRFCA that Dr. Ebben, the State agency consultant, prepared on February 4, 2019 (Tr. 176-79). Dr. Ebben's MRFCA adopted Dr. Perry's MRFCA which had adopted verbatim the mental RFC findings set forth in prior Administrative Law Judge decision dated March 13, 2017 (Tr. 179). Dr. Ebben had the benefit of considering medical Exhibits B1F-B4F, plus medical Exhibit B6F, which is mental health treatment records dated July 18, 2018 to November 28, 2018, from LifeSkills, Inc. (*see* Tr. 169-71, 687-737). Seemingly, the holding in Drummond may have also influenced Dr. Ebben's decision to adopt verbatim the mental RFC findings set forth in the prior decision dated March 13, 2017, as he determined there was no new evidence that would alter those findings (*see* Tr. 174, 177, 179, 181-82).

When Drs. Perry and Ebben issued their MRFCA's they did not have the opportunity to review the medical records regarding: (1) Plaintiff's inpatient crisis stabilization treatments in January 2019 (Tr. 818-31), December 2019 (Tr. 1015-23, 1027-58), and May 2021 (Tr. 1319-55);

---

17 Several months earlier, the Sixth Circuit clarified that Drummond does "not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." Earley v. Comm'r of Soc. Sec., 893 F.3d 929, 931 (6th Cir. 2018).

(2) the bulk of the medical evidence in the record concerning Plaintiff mental impairments including Exhibits B8F (Tr. 746-749), B9F (Tr. 750-919), B17F (Tr. 976-1064), B18F (Tr. 1065-1081), B19F (Tr. 1082-1129), B21F (Tr. 1140-1288), B23F (Tr. 1293-1314), B25F (Tr. 1319-1355), and B26F (Tr. 1356-1374); and (3) the mental assessment forms that the treating psychiatric nurse practitioner, Carol Stowe Byrd, DNP, APRN, filed out on November 14, 2019 and May 27, 2021 (Tr. 967-68, 971-72, 1315-17).

Defendant does not dispute that Drs. Perry and Ebben made their administrative medical findings before the bulk of the medical evidence concerning Plaintiff's mental impairments was added to the record (DN 14 PageID # 1437). Defendant argues that the ALJ overcame this issue by considering the subsequently submitted medical evidence and finding that the administrative medical findings of Drs. Perry and Ebben are "persuasive" because they are consistent with the overall medical evidence in the record (Id. at PageID 1437-38) (citing Durard v. Comm'r of Soc. Sec., No. 5:20-CV-00102-LLK, 2021 WL 467208, at *2 (W.D. Ky. Feb. 9, 2021)).

The ALJ's discussion of the administrative medical findings of Drs. Perry and Ebben does not acknowledge that they both adopted verbatim the mental RFC findings set forth in the prior Administrative Law Judge's decision dated March 13, 2017 (Tr. 27).[18] The ALJ's decision does indicate that he considered the subsequently submitted medical evidence and finds the administrative medical findings of Drs. Perry and Ebben "persuasive" because they are consistent with and supported by the ALJ's interpretation of "the overall medical evidence of record" (Tr. 27). But the 47 pages of treatment notes to which the ALJ generally refers do not constitute the

---

18 The ALJ acknowledges the prior Administrative Law Judge's decision and finds it persuasive "only where it is consistent with Dr. Perry's assessment" (Tr. 27-28) (citing Exhibit B1A, Tr. 150-65). But the ALJ does not mention that Drs. Perry and Ebben adopted verbatim the mental RFC findings set forth in that prior decision.

overall medical evidence of record and, for the reasons previously provided, do not constitute substantial evidence in the record to support the ALJ's mental RFC findings. Moreover, without the benefit of a medical opinion to support his determination, the ALJ may have impermissibly interpreted the raw medical data in functioning terms when he concluded the administrative medical findings of Drs. Perry and Ebben are consistent with and supported by the subsequently received medical evidence. See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functioning terms and no medical opinion supported the determination."); Lenon v. Apfel, 191 F.Supp.2d 968, 977 (W.D. Tenn. 2001) (finding the ALJ gave into the temptation to play doctor when made functional findings based on his own interpretation of the treating physician's findings). Thus, substantial evidence in the record does not support the ALJ's persuasiveness determination as to the administrative medical findings of Drs. Perry and Ebben.

Having found that substantial evidence does not support the ALJ's interpretation of the medical evidence and his persuasiveness finding as to the assessments of Drs. Perry and Ebben, the undersigned declines to address Plaintiff's remaining claims concerning the ALJ's mental RFC determination. Further, there is no need to address Plaintiff's related challenges to Finding Nos. 8, 9, and 10.

"A district court's authority to remand a case . . . is found in 42 U.S.C. § 405(g) . . ." Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 482-83 (6th Cir. 2006). Sentence four of 42 U.S.C. § 405(g), authorizes the Court to issue a final judgment reversing the final decision of the Commissioner and remand the case to the Commissioner with instructions to consider additional evidence and/or conduct additional proceedings to remedy a defect in the original proceedings.

Faucher v. Sec'y of Health & Hum. Servs., 17 F.3d 171, 174-75 (6th Cir. 1994). For the above stated reasons, the final decision of the Commissioner should be reversed, and the case remanded to the Commissioner for further proceedings.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **REVERSED,** and the case is **REMANDED** to the Commissioner with instructions to consider additional evidence and conduct additional proceedings to remedy the above identified defects in the original proceedings.

August 14, 2023

H. Brent Brennenstuhl
United States Magistrate Judge

Copies: Counsel